IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES MILLER KEITH, IV, | § | |
|     TDCJ-CID NO.624738, | § | |
|         Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-06-52 |
| | § | |
| ESTELLE UNIT HIGH SECURITY | § | |
| ADMINISTRATION, *et al.*, | § | |
|         Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff James Miller Keith, IV, an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") proceeding *pro se* but not *in forma pauperis*, has filed a complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entry No.12). The Court will dismiss plaintiff's complaint because it is legally frivolous and fails to state a claim under 28 U.S.C. § 1915A.

BACKGROUND

In his original pleading (Docket Entry No.12), plaintiff complains that the Estelle Unit High Security Administration of TDCJ-CID has violated his civil rights as follows:

1. He has been denied items necessary to perform religious rituals in violation of the First Amendment's Free Exercise Clause;

2. He has been denied exposure to sunlight and to knowledge of day and night in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; and,

3. He has been subject to deliberate indifference toward his serious medical and psychiatric needs in violation of the Eighth Amendment.

In his response to the Court's Order for a more definite statement (Docket Entry No.25), plaintiff complains of the following:

    1.    He body is scarred and pock-marked because he has been denied adequate medical care;

    2.    He has hallucinated as a result of inadequate psychiatric treatment and confinement in a windowless cell;

    3.    He has been denied knowledge of day and night;

    4.    Because he has been denied exposure to sunlight, he suffers from a vitamin deficiency, his bones will be brittle, and he will suffer from osteoporosis in his old age; and,

    5.    He has been denied religious freedom.

(Docket Entry No.25, page 11). Plaintiff also indicates that he is suing the Estelle Unit High Security Administration because he has been made to file grievances, which have been denied by various TDCJ-CID administrators. (*Id.*, pages 12-14). Plaintiff also complains that during medical rounds two to three times a week, Nurse Revel has denied him all medical treatment by her statement, "You got yourself here, now suffer." (*Id.*, page 14). He also sues all charge nurses presiding over nurse sick call from 2000 to 2006, and Physician's Assistant Healy because the nurses and P.A. Healy examined him verbally or by quick visuals and then prescribed ineffective medications. (*Id.*).

Plaintiff seeks an order directing TDCJ-CID officials to allow him to purchase items necessary to perform religious rituals and to provide him with access to direct sunlight by moving him to a cell with a window and allowing him to exercise out-of-doors. He also seeks an order directing officials to provide federally orchestrated medical and psychiatric evaluations. (Docket Entry No.12). Plaintiff also seeks compensatory damages. (*Id.*).

DISCUSSION

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). The PLRA requires that the district court review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the Court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Under that standard, courts must assume that plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Id.* (citations omitted).

### Estelle Unit's High Security Administration

Plaintiff seeks equitable and compensatory relief from the Estelle Unit's High Security Administration for denying him adequate medial and psychiatric care, confining him in a windowless cell, and restricting his exercise to areas with indirect sunlight, and not allowing him to purchase religious items. The Estelle Unit's High Security Administration is immune from suit for monetary damages under the Eleventh Amendment because it is an instrumentality of the State. *Harris v. Angelina County, Texas*, 31 F.3d 331, 337 n.7 (5th Cir. 1994); *In re Clements*, 881 F.2d 145, 150 (5th Cir. 1989). Therefore, to the extent that plaintiff seeks monetary damages from the Estelle Unit's High Security Administration, his claims are subject to dismissal.

Moreover, the limited exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123 (1908) is inapplicable to plaintiff's suit against the Administration. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (holding"[t]o meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect"). To the extent that plaintiff seeks declaratory and injunctive relief against the Estelle Unit's High Security Administration and not its individual members, his claims are subject to dismissal.

### TDCJ-CID Administrators

To the extent that plaintiff seeks equitable and monetary relief from named TDCJ-CID administrators[1] because he had to file grievances and because they denied the same, his claims are

---

[1] Plaintiff complains that the following administrators have denied his grievances: T. Morgan, T. Ruddey, S.Rich, Donna Vallie, E. Gutierrez, Bill Pierce, T. Morgan, and Bill Lewis.

without legal merit. A civil rights plaintiff must establish a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation. *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981). This may be done by alleging either active participation by the defendant in the actions causing the deprivation of the plaintiff's constitutional rights or affirmative adoption by the defendant of policies, which were wrongful or illegal and which cause the constitutional deprivation. *Wanger v. Bonnner*, 621 F.2d, 675, 679 (5th Cir. 1980). Theories of vicarious liability, such as *respondeat superior* cannot support a cause of action under section 1983. *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983). Plaintiff has stated no facts to show that the named defendants-administrators, who he maintains form part of the Estelle Unit's High Security Administration, were involved in complaints that plaintiff raised in each grievance or that they had anything to do with the requirement to file such grievances. Accordingly, plaintiff's claims against defendants T. Morgan, T. Ruddey, S. Rich, Donna Vallie, E. Gutierrez, Bill Pierce, T. Morgan, and Bill Lewis are subject to dismissal.

Conditions of Confinement

Plaintiff complains that he has been denied access to sunlight in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. He contends that he has been confined in windowless cells from mid-to-late 2000 until early 2006, with no way to distinguish between day and night and has only been allowed to exercise in a covered recreation cage with "no direct or otherwise sunlight." (Docket Entry No.25, page 16). Plaintiff claims he suffers from a Vitamin D deficiency from lack of sunlight and he will suffer bone deficiencies and possibly osteoporosis as he ages. (*Id.*).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that a prisoner be afforded "humane conditions of confinement" and prison officials ensure that the inmate receives adequate food, shelter, clothing, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish an Eighth Amendment violation of conditions of confinement, an inmate must first show that the deprivation alleged was sufficiently serious, *i.e.*, an official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *Id.* Second, the inmate must show that the offending prison official possessed a sufficiently culpable state of mind, *i.e.*, the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294 (1991).

This test, as applied here, compels the conclusion that plaintiff's deprivation of sunlight claim is meritless. The Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir. 1989). "Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature at night combined with a failure to issue blankets." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (citing *Wilson,* 501 U.S. at 304). "There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates" and the absence of such exercise may constitute an Eighth Amendment violation. *Spain v. Procunier,* 600 F.2d 189, 199-200 (9th Cir. 1979) (citations omitted); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979); *Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir. 1981); *Moore v. Fraiser*, 104 Fed. Appx. 385 (5th Cir. 2004) (not designated for

publication).  *But compare Spain,* 600 F.2d at 199 (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with *Clay v. Miller,* 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to day-room 18 hours per day).  Related authority suggests that in certain circumstances, deprivation of sunlight may constitute an Eighth Amendment violation.  *See Richard v. Reed*, 49 F.Supp.2d 485, 488 n.5 (E.D. Va. May 3, 1999) (citations omitted), *aff'd* 188 F.3d 503 (4th Cir. 1999).

In this case, plaintiff fails to state a colorable claim that any TDCJ-CID employee acted with deliberate indifference in denying him access to direct sunlight, particularly because there may be legitimate security reasons for the restricting his access to outdoor recreation in direct sunlight, as TDCJ administrators stated in their responses to plaintiff's grievances.  *See Bell v. Wolfish*, 441 U.S. 520, 527 (1979) (mandating that courts accord broad deference to prison administrators' "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").  Plaintiff's pleadings show that in response to his grievance complaining that he had been denied access to a recreation area with direct sunlight and that his health was in danger from his body's inability to produce Vitamin D, TDCJ-CID administrator T. Roddey stated the following:

> The following sections of the Ad-Seg Plan are applicable to your specific complaint: III.C.1: offenders shall be allowed physical recreation outside of their cells, to include the opportunity to recreate outdoors, weather permitting.  III.C.3. Segregation offenders may on a case-by-case basis, be denied the opportunity for out-of-cell recreation when fulfilment of the requirement would create an immediate and serious threat to the physical safety or security of the offender, other offenders, or staff.  No further action warranted.

(Docket Entry No.12, page 7).  In response to his grievance complaining of being confined in a cell without a window, TDCJ-CID officials noted that outside windows were not required by the *Ruiz*

litigation (*id.*, page 21) and that plaintiff had been assigned to the Estelle Unit High Security following a disciplinary for staff assault. The response also noted that plaintiff had been afforded the opportunity for outside recreation. (*Id.*, page 23).

Moreover, plaintiff has not named a TDCJ-CID employee who is allegedly responsible for his incarceration in a windowless cell and for his recreational restrictions, other than the supervisors who denied his grievances. He further fails to state how long he is confined in his cell each day.

Because he fails to state any facts to show that a TDCJ-CID employee acted with deliberate indifference by confining him in a windowless cell and denying him out-of-doors exercise, plaintiff's claims are subject to dismissal.

First Amendment Free Exercise

Plaintiff claims that the Estelle Unit's High Security Administration has denied his right to the free exercise of his religion. Plaintiff claims that he has been denied the right to purchase items, such as candles and matches, which are necessary to conduct rituals pursuant to the Satanic Bible. (Docket Entry No.12, pages 2, 12, 14). Plaintiff indicates that Chaplain Cole denied his request to purchase a white candle, a black candle, a lighter or igniter or a book of matches because plaintiff was not allowed to have any of these items. (*Id.*, pages 15, 25). Plaintiff also requested the chaplain to assist him in obtaining the addresses of the nearest churches and groups associated with Satanic worship. (*Id.*, page 27). Chaplain Cole responded that he had no knowledge of such churches or groups. (*Id.*). In response to plaintiff's grievance, complaining that he was not allowed to purchase religious items, E. Gutierrez noted that Chaplain Cole advised that "TDCJ Chaplaincy policy does not make any provision or give any instructions for any type of ritual or ceremony practiced by

Satanists or those offenders practicing Satanism." (*Id.*, page 13).  Bill Pierce, the Director of Chaplaincy Department, denied plaintiff's Step 2 grievance on the same ground, (*Id.*, page 15).

Although incarcerated, an inmate retains his First Amendment right to the free exercise of religion, subject to reasonable restrictions and limitations necessitated by penological goals. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987). The exercise of religion often involves not only belief and profession but the performance of . . . physical acts such as assembling with others for a worship service or participating in sacramental use of bread and wine. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). To establish a free exercise violation, an inmate must demonstrate that prison officials prevented him from engaging in his religious conduct without any justification related to legitimate penological concerns. *Turner*, 482 U.S. at 89. The Court considers four factors in reviewing such claims: (1) whether there is a rational connection between the prison regulation and the claimed penological goal; (2) whether alternative means of exercising the right in question remains open to inmates; (3) the impact of accommodation on guards, other inmates and prison resources in general, and; (4) whether there is an absence of ready alternatives which would evince the reasonableness of a regulation. *Id.* In evaluating the prison rules that impinge on religious practices, the Court must accord wide deference to prison officials' decisions in light of the need to preserve internal order and security unless there is substantial evidence to indicate the prison administrators have exaggerated their response to such considerations. *Id.* A court need not "weigh evenly, or even consider, each of these factors" as rationality is the controlling standard. *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992).

Although neither TDCJ publications nor circuit case law acknowledge or discuss the practice of Satanism or items used in religious rituals in Texas prisons, the United States District Court for

9

the Northern District of Texas, Wichita Falls Division, noted in an analogous case that for security reasons, TDCJ does not allow for in-cell use candles, fire, and other specified religious items associated with Wiccan ceremonies. *Marx v. Larsen*, Civil Action No.7:02-126-R, 2003 WL 22425032 (N.D. Tex. Sept. 24, 2003). The District Court found that inmates who practice Wicca may assemble and meet with approved spiritual advisors who may utilize items such as candles for religious ceremonies. *Id.* The Wichita Falls District Court further found that "[d]efendants have established that reasonable accommodations, balanced with legitimate security concerns, are provided for Wiccans to exercise their religion and that alternative means are provided for religious practices without each of the items requested by Plaintiff for personal use in his cell." *Id.*

Clearly, if prison restrictions related to in-cell use of candles and fire for performing Wiccan rituals are reasonably related to legitimate security concerns, the same restrictions are also reasonably related to legitimate security concerns for practitioners of all religious groups, including Satanists. *See Kahey v. Jones*, 836 F.2d 948, 950-51 (5th Cir. 1988) (noting that making special provisions for one prison group would show favoritism and lead to many other requests for similar accommodations and adverse impact on prison morale). Plaintiff does not indicate that he cannot practice his religion without the items he has requested. *See Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 862 (5th Cir. 2004) (noting class in *Freeman* "has not offered an alternate solution that would expose TDCJ's policy as an 'exaggerated response to prison concerns'"). Moreover, plaintiff's pleadings do not show that Chaplain Cole or other TDCJ-CID officials have denied him alternative means for engaging in religious practices. Instead, the pleadings show that the TDCJ-CID chaplain was not aware of any other practitioners and TDCJ had no rules or policies with respect to Satanism. *See id.* (finding that members of small religious groups must be afforded

a reasonable opportunity to practice their faith, but need not be provided with facilities or personnel identical to those given to members of more populous denominations).

Furthermore, TDCJ Units are tobacco free; therefore, inmates are not allowed to possess tobacco related items such as lighters. *See Wren v. Johnson*, Civil Action No. V-04-076, 2006 WL 2092438 (S.D. Tex. Jul. 26, 2006); TDJC publications: Offender Orientation Handbook and General Information Guide fo Families of Offenders. A facially neutral regulation, which is generally applicable, like the one banning tobacco related items, does not violate the Free Exercise Clause, even if it incidentally affects religious practices. *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 878-79 (1990). Therefore, it follows that denying plaintiff matches or lighters for in-cell use does not infringe upon the free exercise of plaintiff's religious beliefs.

Plaintiff's pleadings fail to state a colorable claim for the denial of his religious beliefs; therefore, such claims are subject to dismissal.

## Medical Care

Plaintiff further complains that the Estelle Unit's High Security Administration has been deliberately indifferent to his serious medical and psychiatric needs. (Docket Entries No.12, No.25). He contends that medical personnel have given inadequate care and advice for his medical conditions and psychiatric personnel have denied that he has any problems and have withheld medications that clinicians on other TDCJ units previously prescribed. (Docket Entry No.12). Specifically, plaintiff states that he suffers from recurring boils and sores on all parts of his body. (Docket Entry No.25). He further states that he hears voices, sees visions, and is taken to other planes by demons and devils where he is tortured and sexually abused; he also has visits from his

deceased parents. (*Id.*). Plaintiff does not deny that he has received treatment for these conditions from Estelle Unit providers; instead, he complains that the treatments have been ineffective and the psychiatric treatments have been discontinued. (*Id.*).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002); *see e.g., Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical

need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Plaintiff's pleadings do not reflect that defendants P.A. Healy and Nurse Revel were aware that plaintiff had a serious skin or mental condition that required a treatment, other than what was prescribed, or that they consciously disregarded his need for treatment. Plaintiff specifically complains that from mid-to-late 2000 until early 2006, all of the charge nurses, including Ms. Revel, and P.A. Healy denied him effective treatment. Plaintiff claims Ms. Revel would say, "You got yourself here, so suffer." (*Id.*). He further claims that Healy would re-prescribe medications that did not cure the conditions or deny medications and instruct him to curb his shower time. (*Id.*). Plaintiff maintains that Revel and Healy would look at his sores, and dismiss him after conducting a visual examination. (*Id.*).

Plaintiff concedes that he has never been hospitalized for his medical condition. (*Id.*). He states no specific dates or incidents related to the denial of medical and psychiatric care or to claims of inadequate treatment although he was given the opportunity to do so in his response to the Order for More Definite Statement. Instead, plaintiff has engaged in self-diagnosis on the basis of a magazine article, which he has attached to his response to the Order for More Definite Statement. Based on this article, plaintiff believes that he has a staph infection, which is not responsive to most antibiotics. He does not indicate that medical personnel have made such diagnosis. He claims the failure to provide adequate treatment has left him with scars and pock-marks. (*Id.*).

13

In response to plaintiff's Step 1 grievance dated September 23, 2005, complaining of itchy sores, administrator S. Rich responded that plaintiff's request for medication for the sores had been denied.[2] (Docket Entry No.12, page 9). Rich noted that "[a]lthough you differ in opinion regarding the treatment[,] the provider, by law, has the authority of treatment." (*Id.*). However, a medication pass dated October 17, 2005 reflects that P.A. Healy prescribed for plaintiff several topical skin medications in October and November of 2005, for weeks at a time. (*Id.*, pages 21-23).

Plaintiff indicates that medical personnel at John Sealy Hospital and at the Jester 4 Unit prescribed chlorpromazine and benztropine for his mental problems but medical personnel at the Estelle Unit's High Security took him off the medications. (*Id.*). In response to a Step 1 grievance complaining that he had been denied psychiatric medication, administrator T. Morgan responded that "[a]ccording to Mr. Sloan, you have been evaluated, and not found to be in need of psychotropic medications." (*Id.*, page 17). Plaintiff claims because he has been denied psychotropic medication, he has experienced visits from his deceased parents, who sexually abuse him. (*Id.*).

Without more, plaintiff's pleadings reflect that he merely disagrees with the diagnosis and treatment of his skin condition and mental illness. He states no facts that would give rise to a claim of deliberate indifference.

Accordingly, the Court will dismiss these claims as legally frivolous.

---

[2] A request from plaintiff for medication for his sores states that he is still broken out some, but the itching while taking the medication was lessened. (Docket Entry No.25, page 20). The LVN responded, "No renewal at this time. Cut down on shower time to avoid hard water dryness." (*Id.*).

## CONCLUSION

Based on the foregoing, the Court ORDERS plaintiff's civil rights complaint is DISMISSED, with prejudice, as legally frivolous and for failure to state a claim under 28 U.S.C. § 1915A (b). All pending motions are DENIED.

The Clerk will provide copies to plaintiff, to the TDCJ-CID Office of the General Counsel, P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax: 512-2159.

It is so ORDERED.

SIGNED at Houston, Texas, on 22nd day of December, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE